1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF COLUMBIA

3

4    WILDEARTH GUARDIANS                          )
     312 Montezuma Avenue                         )
     Santa Fe, NM 87501                           )
5                                                 )
     CENTER FOR NATIVE ECOSYSTEMS                 )
6    1536 Wynkoop Street, Suite 303               )
     Denver,CO 80202                              )
7                                                 )
     BORN FREE USA UNITED WITH                    )
8    ANIMAL PROTECTION INSTITUTE                  )    Civil Action No. _____
     1122 S. Street                               )
9    Sacramento, CA 95811                         )
                                                  )    COMPLAINT FOR
10   ANIMAL PROTECTION OF NEW MEXICO              )    DECLARATORY AND
     301 Gold Avenue, SW                          )    INJUNCTIVE RELIEF
11   Albuquerque, NM 87102                        )
                                                  )
12   CARSON FOREST WATCH                          )
     c/o WildEarth Guardians                      )
13   312 Montezuma Avenue                         )
     Santa Fe, NM 87501                           )
14                                                )
                    Plaintiffs,                   )
15                                                )
                                                  )
16              vs.                               )
                                                  )
17   H. DALE HALL, in his official capacity as    )
     Director of the U.S. Fish and Wildlife Service )
18   1849 C Street, N.W.                          )
     Washington, D.C. 20240                       )
19                                                )
     THE U.S. FISH AND WILDLIFE SERVICE           )
20   1849 C Street, N.W.                          )
     Washington, D.C. 20240                       )
21                                                )
     DIRK KEMPTHORNE, in his official capacity as )
22   Secretary of the Department of Interior      )
     1849 C Street, N.W.                          )
23   Washington, D.C. 20240                       )
                                                  )
24   THE U.S. DEPARTMENT OF INTERIOR              )
     1849 C Street, N.W.                          )
25   Washington, D.C. 20240                       )
                                                  )
26              Defendants.                       )
     _____  )

27

28   WildEarth Guardians v. Hall  Page 1

INTRODUCTION

1.  Plaintiffs, WildEarth Guardians *et al.*, hereby bring this civil action for declaratory and injunctive relief against the above named Defendants (the "U.S. Fish and Wildlife Service" or "FWS") pursuant to § 11 (g) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540 (g), for violations of § 4 (b)(3)(A) of the ESA, 16 U.S.C. § 1533 (b)(3)(A).

2.  This civil action arises from the FWS's on-going and continued failure to make a requisite 90-day finding on Plaintiffs' August 1, 2007 petition to change the listing status of Canada lynx ("lynx") to provide threatened ESA status to lynx entering and inhabiting north-central New Mexico.

3.  As outlined in this complaint, the FWS's failure to make the requisite 90-day finding on Plaintiffs' petition to list lynx in New Mexico is a violation of § 4 (b)(3)(A) of the ESA, "arbitrary and capricious, an abuse of discretion, and not in accordance with law," and represents "agency action unlawfully withheld or unreasonably delayed." 16 U.S.C. § 1533 (b)(3)(A); 5 U.S.C. §§ 706 (2)(A) and (1).

JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question) and 16 U.S.C. § 1540 (g) (1) (ESA).

5.  The Court has the authority to review the inaction and/or action of the FWS complained of herein, and grant the relief requested, pursuant to the ESA, 16 U.S.C. § 1540 (g), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.  All requirements for judicial review required by the ESA, 16 U.S.C. § 1540 (g), including the requirement of providing sixty days notice of intent to sue prior to filing a civil action, have been satisfied.

6. The relief sought is authorized by 28 U.S.C. § 2201 (Declaratory Judgment), 28 U.S.C. § 2202 (Injunctive Relief), 16 U.S.C. § 1540 (g) (ESA), and 5 U.S.C. § 706

(APA).

7. Venue is properly before this Court pursuant to 28 U.S.C. § 1391(e).

8. There is a present and actual controversy between the Parties.

PARTIES

9.  Plaintiff, WILDEARTH GUARDIANS, is a non-profit, 501 (c)(3) organization with offices in Boulder, Denver, Phoenix, and Santa Fe, New Mexico.  WildEarth Guardians is a new non-profit environmental organization created on January 28, 2008 by the merger of three organizations: Forest Guardians; Sinapu; and Sagebrush Sea Campaign.  Forest Guardians and Sinapu, both predecessors-in-interest of WildEarth Guardians, were the lead petitioners in this case.  WildEarth Guardians ("WildEarth") continues Forest Guardians' and Sinapu's efforts to protect the lynx in the Southern Rockies and its broader mission to protect and restore wildlife and wildlands in the American Southwest.  WildEarth has over 4,500 members, some of whom reside in the District of Columbia.  Many of the WildEarth's staff and members live in and around the Southern Rockies' San Juan and Sangre de Cristo Mountains where lynx have been released, will be released, and currently reside.  WildEarth's members and staff have used, and will continue to regularly use, and repeatedly use the "core lynx recovery area" in southwestern Colorado – including areas throughout the San Juan Mountains and Sangre de Cristo Mountains in north-central New Mexico where lynx are currently residing – for observation, research, aesthetic enjoyment, and other recreational, scientific, and educational activities.  WildEarth's members and staff derive scientific, recreational, conservation, and aesthetic benefits from the lynx's existence in the wild and return to the Southern Rockies.  For WildEarth's  members and staff, working to restore and protect lynx in the Southern Rockies and observing lynx in the wild, as well as being aware of the presence of lynx and the health of lynx habitat are key components to their enjoyment of their visits to these areas.  WildEarth and its members and staff believe that

WildEarth Guardians v. Hall  Page 3

1  all species and their natural communities have the right to exist and thrive.  WildEarth's

2  members and staff use the best available science to forward its mission through

3  participation in policy formation, administrative processes, legal action, ESA petitions,

4  public outreach and organizing, and education.  WildEarth and its members and staff have

5  a specific, concrete interest in protecting and restoring the Canada lynx and its habitat in

6  the Southern Rockies and are leading a campaign with other conservation groups to that

7  end.  As part of this effort, in early August 2007, WildEarth petitioned FWS to protect

8  lynx in New Mexico.  In furtherance of their concrete interest in protecting and restoring

9  the lynx to the Southern Rockies, WildEarth (then Sinapu) also intervened in a lawsuit

10  brought by the Farm Bureau, which had filed suit against the Colorado Division of

11  Wildlife (CDOW) in an attempt to derail lynx reintroduction efforts and prevent the

12  release of additional lynx in 2003.  The CDOW and WildEarth prevailed in the suit and

13  lynx were released in the winter of 2002-2003 in the Colorado Rockies.  On April 23,

14  2003, a number of WildEarth's staff and members witnessed the release of seven lynx

15  into the wild in the San Juan National Forest of Colorado.  Guardians also worked with

16  the Pitkin County Commission to pass a resolution stating that they want lynx in their

17  county.  The County Commission sent their letter to the Colorado Wildlife Commission.

18  WildEarth's staff and members have also testified at the Colorado Wildlife Commission's

19  hearings in support of augmenting the lynx reintroduction program and supplied two

20  letters in support of the augmentation to the CDOW.  Additionally, on October 24, 2002,

21  a few of WildEarth's staff and members met with CDOW staff to discuss lynx

22  conservation issues in the Southern Rockies.  WildEarth brings this action on behalf of

23  itself and its adversely affected members and staff.

24      10.  Plaintiff, CENTER FOR NATIVE ECOSYSTEMS ("CNE"), is a non-profit

25  advocacy organization dedicated to conserving and recovering naturally functioning

26  ecosystems in the greater Southern Rocky Mountains and plains.  CNE maintains offices

27

28  WildEarth Guardians v. Hall  Page 4

1   in Paonia and Boulder, Colorado.  CNE has approximately 200 members in Colorado and

2   other states including New Mexico.  Many of CNE's members and staff live in and

3   around the Southern Rockies where lynx have been released, will be released, and

4   currently reside.  CNE and its members and staff value the ways that humans benefit from

5   protecting native biological diversity, including protecting clean water and fresh air,

6   healthy human communities, sources of medicines and foods, and recreational

7   opportunities.  CNE and its members and staff believe that all species and their natural

8   communities have the right to exist and thrive.  CNE uses the best available science to

9   forward its mission through participation in policy formation, administrative processes,

10  legal action, ESA petitions, public outreach and organizing, and education.  CNE has a

11  specific, concrete interest in protecting and restoring the Canada lynx and its habitat to

12  the Southern Rockies, listing lynx as threatened under the ESA, and is leading a campaign

13  with other conservation groups to that end.  The conservation and recovery of lynx in the

14  Southern Rockies, including getting lynx in New Mexico ESA status, is a major program

15  effort for CNE.  CNE repeatedly reports on the status of Colorado's lynx release program

16  to its members and the press.  CNE repeatedly distributes news releases to the media and

17  garners news coverage on Southern Rocky Mountain lynx issues.  CNE prepared and

18  submitted a comment letter, signed by eight other conservation groups, on the Forest

19  Service's scoping notice regarding the preparation of forest plan amendments for Canada

20  lynx throughout Colorado and southern Wyoming.  CNE has actively tracked the Forest

21  Service's lynx habitat mapping process in the Southern Rockies over the past several

22  years, frequently communicating with various Forest Service biologists and other staff

23  and reviewing Forest Service data and maps.  CNE frequently raises concerns about the

24  potential impacts of proposed land management actions on lynx and lynx habitat, and

25  frequently assists other conservation organizations in doing the same.  For example, CNE

26  joined groups in submitting comments on the proposed Millswitch Timber Sale in which

27

28  WildEarth Guardians v. Hall  Page 5

we discussed at some length potential impacts to lynx and lynx habitat.  Similarly, CNE joined several other groups in submitting an October 25, 2002 comment letter on the proposed Missionary Ridge Timber Salvage project, again raising concerns about potential impacts of the proposed project on lynx and lynx habitat.  CNE also prepared a guide on the status, conservation needs, and management implications regarding lynx in the Southern Rocky Mountains, and distributed this guide to other conservation groups throughout the region.  CNE joined the August, 2007 petition to list lynx in New Mexico at issue in this case.  CNE's members and staff have, and will continue, to regularly and repeatedly use the "core lynx recovery area" in southwestern Colorado – including areas throughout the San Juan Mountains and Sangre de Cristo Mountains in north-central New Mexico where lynx are currently residing and traveling – for observation, research, aesthetic enjoyment, and other recreational, scientific, and educational activities.  CNE's members and staff derive scientific, recreational, conservation, and aesthetic benefits from the lynx's existence in the wild and return to the Southern Rockies.  For CNE's members and staff, working to restore and protect lynx to the Southern Rockies and observing lynx in the wild, as well as being aware of the presence of lynx and the health of lynx habitat are key components to their enjoyment of their visits to these areas.  In furtherance of this interest, CNE staff and members visited National Forest lands near Creede, Colorado on April 23, 2003 to witness the release of several lynx into the wild.  CNE members and staff will continue fight for the restoration and protection of lynx to the Southern Rockies and will continue to visit lynx habitat in the Southern Rockies in the hopes of seeing lynx once again.

11.  Plaintiff ANIMAL PROTECTION OF NEW MEXICO ("APNM") is a non-profit membership organization, organized under the laws of the State of New Mexico, that advocates for the rights of animals.  APNM is dedicated to educating the public on animal welfare issues in the State of New Mexico and works diligently to protect and

restore native species and their habitat in the State.  Many of APNM's 1,800 members

and staff live in and around the Southern Rockies' San Juan and Sangre de Cristo

Mountains where lynx have been released, will be released, and currently reside.

APNM's members and staff have, and will continue, to regularly and repeatedly use the

"core lynx recovery area" in southwestern Colorado – including areas throughout the San

Juan Mountains and Sangre de Cristo Mountains in north-central New Mexico where lynx

are currently residing – for observation, research, aesthetic enjoyment, and other

recreational, scientific, and educational activities.  APNM's members and staff derive

scientific, recreational, conservation, and aesthetic benefits from the lynx's existence in

the wild and return to the Southern Rockies.  For APNM's members and staff, working to

restore and protect lynx to the Southern Rockies and observing lynx in the wild, as well as

being aware of the presence of lynx and the health of lynx habitat are key components to

their enjoyment of their visits to these areas.  APNM and its members and staff believe

that all species and their natural communities have the right to exist and thrive.  APNM's

members and staff use the best available science to forward their mission through

participation in policy formation, administrative processes, ESA petitions, legal action,

public outreach and organizing, and education.  APNM and its members and staff have a

specific, concrete interest in protecting and restoring the Canada lynx and its habitat to

the Southern Rockies and are leading a campaign with other conservation groups to that

end.

12.  Plaintiff BORN FREE USA UNITED WITH ANIMAL PROTECTION

INSTITUTE ("API") (formerly known as Animal Protection Institute) is a national

nonprofit advocacy organization headquartered in Sacramento, California.  API is

dedicated to educating and encouraging the public to treat animals humanely.  To

accomplish its objectives, API engages in litigation, legislative activity, research, and

public education.  API also comments regularly on federal and state proposals that affect

WildEarth Guardians v. Hall  Page 7

wildlife and companion animals.  Among its many programs, API advocates for

protecting threatened and endangered species like Canada lynx.  Many of API's

approximately 85,000 members, supporters, and staff use and live in and around the

Southern Rockies' San Juan and Sangre de Cristo Mountains where lynx have been

released, will be released, and currently reside.  API's members and staff have, and will

continue, to regularly and repeatedly use the "core lynx recovery area" in southwestern

Colorado – including areas throughout the San Juan Mountains and Sangre de Cristo

Mountains in north-central New Mexico where lynx are currently residing – for

observation, research, aesthetic enjoyment, and other recreational, scientific, and

educational activities.  API's members and staff derive scientific, recreational,

conservation, and aesthetic benefits from the lynx's existence in the wild and return to the

Southern Rockies.  For API's members and staff, working to protect and restore lynx to

the Southern Rockies and observing lynx in the wild, as well as being aware of the

presence of lynx and the health of lynx habitat are key components to their enjoyment of

their visits to these areas.  API and its members and staff believe that all species and their

natural communities have the right to exist and thrive.  API's members and staff use the

best available science to forward their mission through participation in policy formation,

administrative processes, ESA petitions, legal action, public outreach and organizing, and

education.  API and its members and staff have a specific, concrete interest in protecting

and restoring the Canada lynx and its habitat to the Southern Rockies and is leading a

campaign with other conservation groups to that end.

       13.  Plaintiff CARSON FOREST WATCH is a volunteer citizen group dedicated

to protecting and restoring the native ecosystems and wildlife communities of New

Mexico with particular emphasis on north-central New Mexico's Carson National Forest.

Many of Carson Forest Watch's members and staff live in and around the Southern

Rockies' San Juan and Sangre de Cristo Mountains where lynx have been released, will

WildEarth Guardians v. Hall  Page 8

be released, and currently reside.  Carson Forest Watch's members and staff have, and

will continue, to regularly and repeatedly use the "core lynx recovery area" in

southwestern Colorado – including areas throughout the San Juan Mountains and Sangre

de Cristo Mountains in north-central New Mexico where lynx are currently residing – for

observation, research, aesthetic enjoyment, and other recreational, scientific, and

educational activities.  Carson Forest Watch's members and staff derive scientific,

recreational, conservation, and aesthetic benefits from the lynx's existence in the wild and

return to the Southern Rockies.  For Carson Forest Watch's members and staff, working

to protect (via listing) and restore lynx to the Southern Rockies and observing lynx in the

wild, as well as being aware of the presence of lynx and the health of lynx habitat are key

components to their enjoyment of their visits to these areas.  Carson Forest Watch and its

members and staff believe that all species and their natural communities have the right to

exist and thrive.  Carson Forest Watch's members and staff use the best available science

to forward their mission through participation in policy formation, ESA petitions,

administrative processes, legal action, public outreach and organizing, and education.

Carson Forest Watch and its members and staff have a specific, concrete interest in

protecting and restoring the Canada lynx and its habitat to the Southern Rockies and are

leading a campaign with other conservation groups to that end.

        14.  The FWS's failure to comply with the ESA, as alleged in this complaint, has

harmed and continues to harm the Plaintiffs' concrete interests.  The FWS's failure to

comply with the ESA creates an increased risk of actual, threatened, and imminent harm

to the lynx and to the Plaintiffs' members' interest in protecting and restoring the lynx to

the Southern Rockies.  At present, lynx have no ESA (or state) protections in New

Mexico and, as such, remain extremely vulnerable (14 lynx killed in New Mexico to

date).  The FWS's failure to comply with the ESA significantly increases the risk of an

unnecessary and avoidable mortality of lynx in an already vulnerable Southern Rocky

WildEarth Guardians v. Hall  Page 9

Mountain lynx population.  Just one unnecessary and avoidable mortality of a lynx in the Southern Rockies significantly reduces the likelihood that the current lynx recovery program will succeed.  FWS's failure to comply with the ESA has adversely affected and continues to adversely affect the interests of the Plaintiffs.

15.  Defendant H. DALE HALL is sued in his official capacity as Director of the U.S. Fish and Wildlife Service ("FWS").  As the Director, Mr. Hall is the FWS official with ultimate responsibility for all of the FWS officials' action or inactions challenged in this complaint.

16.  Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the federal agency responsible for applying and implementing the federal laws and regulations challenged in this complaint.

17.  Defendant DIRK KEMPTHORNE is sued in his official capacity as Secretary of the Department of Interior ("DOI").  As the Secretary of the DOI, Mr. Kempthorne is the DOI official with ultimate responsibility for all the FWS officials' inactions or actions challenged in this complaint.

18.  Defendant UNITED STATES DEPARTMENT OF INTERIOR is the department of the United States Government with supervisory and managerial responsibility over FWS and is responsible for applying and implementing the federal laws and regulations challenged in this complaint.

BACKGROUND

The Canada Lynx

19.  On March 24, 2000, the FWS determined the contiguous United States distinct population segment ("DPS") of lynx to be "threatened" under the ESA (65 Fed. Reg. 16052).

WildEarth Guardians v. Hall  Page 10

20.  The lynx is a medium-sized cat with long legs, large, well furred paws, long tufts on the ears, and a short, black-tipped tail.



21.  It is difficult to distinguish a lynx (*Lynx canadensis*) from its North American relative, the bobcat (*Lynx rufus*).  The two species are both about the same size, have ear tufts and facial ruffs, and have short tails.  The differences include only: (1) the size of the feet (lynx have very large feet that look out of proportion to the rest of their body); (2) the amount of black on the tail (the tip of the tail on a lynx is completely black whereas a bobcat's tail has a black spot on the top and is white underneath); and (3) discrete differences in coloring (the pelage of a lynx generally consists of uniform coloring whereas bobcats will typically have some distinct spots or striping).

22.  Lynx are highly specialized predators whose primary prey is the snowshoe hare.  Snowshoe hares comprise 35-97% of the lynx's diet throughout its range.  Other prey species include red squirrel, grouse, rabbits, flying squirrel, ground squirrel, porcupine, beaver, mice, voles, shrews, fish, and small ungulates.

23.  Southern populations of lynx likely prey on a wider diversity of species than northern populations because of lower average hare densities and differences in small mammal communities.  In areas characterized by patchy distribution of lynx habitat, lynx

WildEarth Guardians v. Hall  Page 11

may prey on other species that occur in adjacent habitats, potentially including white-tailed jackrabbit, black-tailed jackrabbit, sage-grouse, and Columbian sharp-tailed grouse.

24.  In the contiguous United States, lynx historically occurred in five separate geographic areas: (1) Northeast; (2) Great Lakes (north-central Minnesota, northern Wisconsin, and the Upper Peninsula and northern portions of Michigan); (3) the Cascade Mountains (western Washington and western Oregon); (4) Northern Rocky Mountains (Idaho, Montana, eastern Washington, eastern Oregon, northeastern Utah, and western Wyoming); and (5) Southern Rocky Mountains (south-central Wyoming, Colorado, and north-central New Mexico).

The Lynx's Southern Rocky Mountain Geographic Area

25.  According to the Federal Lynx Biology Team's Lynx Conservation Assessment and Strategy (LCAS), the lynx's Southern Rocky Mountain Geographic Area ("Southern Rockies" or "Southern Rocky Mountains") includes the mountainous regions of south-central Wyoming, Colorado, and north-central New Mexico including the San Juan and Sangre de Cristo Mountain ranges.

26.  The Southern Rockies are isolated form the rest of the Rocky Mountain chain by vast sagebrush and desert shrub communities in the Wyoming Basin and the Red Desert in southern and central Wyoming, and arid Green and Colorado River plateaus in western Colorado and eastern Utah.

27.  Primary lynx habitat in the Southern Rockies is likely found within the subalpine and upper montane forest zones, typically between 2,450-3,650 meters (8,038 to 11,975 feet) in elevation.

28.  At the upper elevations of the subalpine, forests are typically dominated by subalpine fir and Engelmann spruce.  As the subalpine transitions to the upper montane, spruce-fir forests begin to give way to a predominance of lodgepole pine, aspen, or mixed stands of pine, aspen, and spruce.  The lower montane zone is dominated by ponderosa

WildEarth Guardians v. Hall  Page 12

pine and Douglas fir, with pine typically dominating the lower, drier, more exposed sites, and Douglas fir occurring on moister and more sheltered sites.  Although this forest zone is likely below primary lynx habitat, lower montane forests likely are important as connective habitat where they may facilitate lynx dispersal and movements between blocks of primary habitat, and may provide some foraging opportunities during those movements.

29.  The Southern Rockies' subalpine and upper montane forest zones, interspersed with lower montane zones – all of which provide outstanding lynx habitat – exists throughout the San Juan and Sangre de Cristo Mountain ranges.  These ranges stretch from southern Colorado into north-central New Mexico.

 The Return of Lynx to the Southern Rockies (Including Northern New Mexico)

30.  To establish and restore a viable population of lynx to the Southern Rockies, the Colorado Division of Wildlife ("CDOW") began releasing lynx into a "core recovery area" in southwestern Colorado's San Juan Mountains in 1999.

31.  Lynx released into the wild are protected as threatened species under the ESA (50 C.F.R. § 17.40 (k)(3)(ii)).

32.  The "core lynx recovery area" where lynx are being released is specifically defined as the area of the San Juan and Rio Grande National Forests and associated lands above 9,000 feet extending from Del Norte west to Dolores and north to include the Uncompahgre and Gunnison National Forests in the Gunnison basin (as far north as Taylor Park east to the Collegiate Range).

33.  CDOW picked southwestern Colorado's San Juan Mountains as the "core recovery area" (i.e., the place to release lynx) because of its outstanding lynx habitat.

34.  The San Juan Mountains include relatively large populations of snowshoe hare (the lynx's primary prey), low road densities, and large forested areas of public land.

35.  CDOW's recovery efforts began with the release of 96 lynx into the San Juan

WildEarth Guardians v. Hall  Page 13

Mountains between 1999 and 2000.  Forty-one lynx were reintroduced in the winter and spring of 1999 and an additional 55 lynx were released in April and May of 2000.

36.  CDOW released an additional 122 lynx (58 females and 64 males) into southwestern Colorado's San Juan Mountains from April, 2003 through July 1, 2007.  To date, a total of 218 lynx (115 females and 103 males) have been released into the Southern Rockies' San Juan Mountains.  There are currently no plans to release any additional lynx in the near future.

37.  The lynx were released into the San Juan Mountains with dual VHF/satellite radio collars that allow CDOW to monitor their movement and mortality.

38.  In the spring of 2003, CDOW discovered the first birth of a lynx in the wild. CDOW documented 9 pairs of lynx during the 2003 breeding season and later discovered 6 dens and a total of 16 lynx kittens that were born in the wild.  To date, 116 lynx kittens have been born in the wild.  A total of 37 lynx dens were found from 2003-2006.  All of the dens except one were scattered throughout the high elevation areas of Colorado, south of I-70.  In 2004, one den was found in southeastern Wyoming, near the Colorado border. Dens were located on steep, north-facing, high elevation slopes – typically in Engelmann spruce/subalpine fir forests in areas of extensive downfall of coarse woody debris.  All dens were located within the winter use areas used by the females.

39.  Of the 218 lynx released by the CDOW, there are now (as of July 1, 2007) 98 known lynx mortalities.  The causes of death include gunshot, starvation, hit by vehicles, probable predation, plague, and unknown human-caused deaths.

40.  CDOW is currently tracking 71 of the 120 reintroduced lynx that are still possibly alive.

41.  There are currently 49 "missing" lynx.  By missing, the CDOW means that they have not heard a signal from the lynx for at least one year, likely because their collar batteries have died or the lynx is outside the core research area.

WildEarth Guardians v. Hall  Page 14

42. The majority of lynx released by the CDOW remain in the San Juan Mountains, from north-central New Mexico north to Gunnison, west as far as Taylor Mesa and east to Monarch Pass.

43. The San Juan Mountains are a high elevation range that extends from southwestern Colorado – the core recovery area – to north-central New Mexico. Lynx released into the core recovery area have, and continue to migrate south along the San Juan Mountains into northern New Mexico.

44. CDOW has tracked and continues to track a number of lynx movements into New Mexico.

45. Aerial telemetry locations of lynx released between 1999 and 2006 reveal that approximately 60 individual lynx have migrated into New Mexico's Taos, Rio Arriba, and San Juan Counties. Lynx have also been tracked as far south as the Los Alamos area, in the Jemez Mountains. Many of the 49 missing lynx from the San Juan Mountains may also be inhabiting north-central New Mexico.

46. CDOW identified a number of travel corridors used repeatedly by more than one lynx, possibly suggesting route selection based on olfactory cues. For southernly movements into New Mexico, this corridor is down the east side of Wolf Creek Pass to the southeast to the Conejos River Valley.

47. Over the last seven years, at *least 14* lynx have been killed in New Mexico. The most recent mortality in New Mexico occurred on January 8, 2007 (gunshot). The CDOW recognized that lynx mortalities occurred throughout the recovery area. However, CDOW determined that mortalities occurred in New Mexico in higher proportion to all lynx locations in that area than elsewhere.

48. According to CDOW, "lynx used New Mexico consistently and with an increasing number of individuals from 1999 through 2006."

49. Approximately 60 lynx (37 females and 23 males) were found within New

WildEarth Guardians v. Hall  Page 15

1  Mexico from February 1999 through March 2007.  While the data shows a decrease in the

2  number of lynx frequenting New Mexico in 2001 through 2003, this decrease, according

3  to CDOW, "was more likely due to fewer satellite collars functioning in those years rather

4  than indicating less use of the area by lynx.  The satellite transmitters placed on lynx in

5  2000 were failing and no new lynx were released or re-collared in 2001 and 2002."

6      50.  CDOW reports that the use-density surface for lynx use in New Mexico

7  indicates the primary areas for use being located either immediately south of the Colorado

8  border and south of the Conejos River Valley or east of Taos, New Mexico.

9  <u>The FWS' Refusal to Provide ESA Protective Status to Lynx in Northern New Mexico</u>

10     51.  Despite the Federal Lynx Biology Team's inclusion of New Mexico with the

11  lynx's Southern Rocky Mountain range, the fact that contiguous, suitable lynx habitat

12  extends into northern New Mexico along the San Juan and Sangre de Cristo Mountain

13  ranges, the established presence and mortality (14 to date) of lynx in northern New

14  Mexico, and the CDOW's conclusion that lynx have used "New Mexico consistently and

15  with an increasing number of individuals from 1999 through 2006," the FWS refuses to

16  provide protective ESA status to lynx entering New Mexico.

17     52.  On July 3, 2003 the FWS published a "Clarification of Findings" on the final

18  rule listing lynx as threatened in the contiguous United States in the federal register (68

19  Fed. Reg. 40076).  In the FWS's Clarification of Findings, FWS states that lynx are only

20  listed in 14 individual states, excluding New Mexico.

21     53.  In the FWS's Clarification of Findings, the FWS determined that: "We do not

22  include New Mexico within the range of lynx because we have no reliable records of

23  native lynx occurring in New Mexico.  Lynx are not included on the list of Mammals of

24  New Mexico (American Society of Mammalogists Web site).  We do not consider lynx

25  recently released into Colorado that strayed into New Mexico as sufficient reason to

26  include New Mexico within the range of native lynx because there is no evidence habitat

27

28  WildEarth Guardians v. Hall  Page 16

1  in New Mexico historically supported lynx."

2    54.  The FWS's determination that New Mexico is not within the lynx's historic

3  range is contradicted by the best available science, including the Federal Lynx Biology

4  Team's LCAS.

5    55.  The list of Mammals of New Mexico (American Society of Mammalogists

6  Web site) – relied upon by FWS in the Clarification of Findings – was prepared for

7  kindergarten-12 teachers and students and is not peer reviewed.  The list of Mammals of

8  New Mexico has now been updated and corrected to include lynx.

9    56.  On January 2, 2004 the FWS (New Mexico Ecological Services Field Office)

10  drafted a letter to the U.S. Forest Service ("USFS") informing the agency that lynx are

11  only "listed as threatened" in 14 individual states (excluding New Mexico) and that "lynx

12  that disperse to New Mexico are not part of the listed population and are not subject to

13  section 7 consultation."

14    57.  The FWS argued in Federal Court (at both the District of New Mexico and the

15  U.S. Court of Appeals for the Tenth Circuit) that they only listed a "14 state" lynx distinct

16  population segment" ("DPS") which excludes New Mexico.  As such, FWS argued that

17  lynx only have protective ESA status in those 14 states.

18    58.  Pursuant to the FWS's current interpretation of the lynx's listing status, a

19  radio-collared lynx that chases a snow-shoe hare across the state boundary into New

20  Mexico would lose its ESA protection the moment it crosses the state line.  Two

21  genetically identical lynx hunting side-by-side in the Southern Rockies can be treated

22  differently: the lynx on the Colorado side of the boundary would receive full ESA

23  protection while the lynx on the New Mexico side would receive no ESA protection.

24  The Petition to Amend the Lynx's Listing Status to Include Lynx in New Mexico

25    59.  On August 1, 2007 the coalition of conservation organizations, including

26  WildEarth Guardians (then known as Forest Guardians and Sinapu), the Center for Native

27

28  WildEarth Guardians v. Hall  Page 17

Ecosystems, Animal Protection Institute, Animal Protection of New Mexico, and Carson

Forest Watch (the "Petitioners"), sent the Secretary of the Department of the Interior and

FWS officials a formal petition pursuant to § 4 (b)(3) of the ESA and 50 C.F.R. § 424.14

to take immediate steps to update and change the lynx's listing status to provide

protective ESA status to lynx in the mountainous regions of north-central New Mexico

(hereinafter "the Petition").

60.   The Petition presents substantial scientific and commerical information

indicating that the FWS needs to provide protective ESA status to lynx in New Mexico.

61.   The Petition explains that the FWS needs to provide protective ESA status to

lynx in New Mexico in order to bring the lynx's listing into compliance with the law,

including: (1) the special listing rule for lynx (50 C.F.R. § 17.40 (k)); (2) the preamble to

the March 24, 2000 listing decision (65 Fed. Reg. 16052); (3) the FWS's 1996 DPS

Policy (61 Fed. Reg. 4725); and (4) the ESA.

62.   The Petition explains that changing the lynx's listing status to include New

Mexico is also supported by the "best scientific and commercial data available"

including: (1) the Lynx Conservation Assessment and Strategy ("LCAS"); (2) a new peer-

reviewed paper on lynx in north-central New Mexico published in Biological

Conservation ("Inferring species distributions in the absence of occurrence records: An

example considering wolverine and Canada lynx in New Mexico"); (3) new baseline

inventory data on small prey-base communities in northern New Mexico; (4) a new thesis

on the distribution, habitat characteristics, and population demographics of snowshoe hare

and mountain cottontail in northern New Mexico; (5) a new paper on summer habitat use

by snowshoe hare and mountain cottontail in northern New Mexico; (6) a new list of

Mammals of New Mexico (which includes lynx); (7) information from the State of New

Mexico's Biota Information System of New Mexico ("BISON"); and (8) the established

presence of lynx in New Mexico from the CDOW's lynx reintroduction program.

WildEarth Guardians v. Hall  Page 18

63. The Petition also explains that providing ESA protective status for lynx in New Mexico is necessary to ensure the survival and recovery of lynx in the Southern Rockies (lynx need more, not less, habitat).

64. On August 8, 2007 the FWS received the Petition.

65. On August 24, 2007, the FWS wrote the Plaintiffs, stating that they received "the petition, dated August 1, 2007, to list the Canada lynx . . .pursuant to the [ESA] in the mountains of north-central New Mexico." In the August 24, 2007 letter, FWS states that "because of staff and budget limitations, it is not practicable for us to work on an administrative finding at this time, unless the species may be in need of emergency listing. . . .preliminary budgets for Fiscal Year 2008 were drafted prior to receipt of this petition. Therefore we anticipate that work on this petition will not begin until Fiscal Year 2009."

66. On January 22, 2008 the Plaintiffs sent the FWS a sixty-day notice of intent to sue pursuant to section 11 (g) of the ESA, 16 U.S.C. § 1540 (g), for failing to make the requisite ninety-day finding on the Petiton in accordance with section 4 of the ESA, § 1533.

67. On February 7, 2008, the FWS sent the Petitioners a letter, stating that "[d]ue to our listing workload and allocated funding, we were unable to start work related to you August 1, 2007 petition . . .during Fiscal Year 2007. However, we have a tentative budget allocation to complete a 90-day finding in Fiscal Year 2008 (by October 2008)."

68. On March 12, 2008 the Petitioners sent the FWS a letter expressing disappointment that the FWS had yet to start work on a 90-day finding and providing the FWS with a 57 page supplemental report (completed after the Petition was sent) by the CDOW entitled: "Wildlife Research Report on Post-Release Monitoring of Lynx Reintroduced to Colorado."

69. On March 17, 2008, FWS confirmed, via e-mail, that they received a copy of

WildEarth Guardians v. Hall  Page 19

the supplemental report and will " add it to the literature they use to address the petition."

70.  As of April 15, 2008 the FWS has yet to issue a 90-day finding on the Petition.

COUNT I

Violation of Section 4 (b)(3)(A) of the ESA

71.  Plaintiffs repeat and incorporate by reference the foregoing paragraphs.

72.  Section 4 (b)(3)(A) of the ESA and the ESA's implementing regulations require the Secretary, to the maximum extent practicable and within 90 days after receiving a petition from an interested person to list a species, to make a finding whether the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533 (b)(3)(A); 50 C.F.R. § 424.14. The 90-day finding must be published in the Federal Register. Id.

73.  On August 8, 2007 Plaintiffs submitted a petition to the Secretary and FWS officials to update and change the listing status of Canada lynx to provide threatened ESA status for lynx in New Mexico.

74.  More than 90 days have passed, and FWS has not issued a 90-day finding on the Plaintiffs' Petition to list lynx in New Mexico or published any finding in the Federal Register.

75.  It is practicable for the FWS to make a 90-day finding on whether the Plaintiffs' Petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted.

76.  The FWS's failure and decision not to issue and publish a 90-day finding on the Petition is a violation of section 4 (b)(3)(A) of the ESA, "arbitrary and capricious, an abuse of discretion, and not in accordance with law" and constitutes "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 706 (2)(A), 706(1).

PRAYER FOR RELIEF

77.  Plaintiffs repeat and incorporate by reference the allegations of all foregoing

WildEarth Guardians v. Hall  Page 20

paragraphs.

78.   WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.   Issue a declaratory judgment that the FWS's failure to issue a 90-day finding on Plaintiffs' Petition violates section 4 (b)(3)(A) of the ESA and 50 C.F.R. § 424.14;

B.   Order the FWS to issue a 90-day finding on Plaintiffs' Petition to list lynx in New Mexico within a reasonable amount of time but no later than two months from the date a declaratory judgment is issued in this case;

C.   Issue such declaratory and/or injunctive relief as Plaintiffs may subsequently request or that this Court may deem appropriate;

D.   Retain continuing jurisdiction of this matter until the FWS fully remedies the violations of law complained of herein;

E.   Grant Plaintiffs their costs and expenses of litigation, including reasonable attorneys' fees pursuant to section 11 (g)(4) of the ESA, 15 U.S.C. § 1540 (g)(4).

F.   Grant such other relief as this Court may deem just and proper.

Respectfully submitted this 15th day of April, 2008.

Matt Kenna (District of DC # CO0028)
Western Environmental Law Center
679 E. 2nd Ave., Suite 11B
Durango, CO. 81301
(970) 385-6941 (tel.)
kenna@westernlaw.org

Matthew K. Bishop, *pro hac vice pending*
Western Environmental Law Center
104 E. Broadway, Suite 7
Helena, MT 59601
(406) 443-3501 (tel.)
bishop@westernlaw.org

Attorneys for Plaintiffs

WildEarth Guardians v. Hall  Page 21

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| | |

| | |
|---|---|
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF<br>**(EXCEPT IN U.S. PLAINTIFF CASES)** | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>**(IN U.S. PLAINTIFF CASES ONLY)**<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- 1  U.S. Government Plaintiff
- 2 U.S. Government Defendant
- 3  Federal Question (U.S. Government Not a Party)
- 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| **A.** *Antitrust* | **B.** *Personal Injury/ Malpractice* | **C.** *Administrative Agency Review* | **D.** *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| 410 Antitrust | 310 Airplane<br>315 Airplane Product Liability<br>320 Assault, Libel & Slander<br>330 Federal Employers Liability<br>340 Marine<br>345 Marine Product Liability<br>350 Motor Vehicle<br>355 Motor Vehicle Product Liability<br>360 Other Personal Injury<br>362 Medical Malpractice<br>365 Product Liability<br>368 Asbestos Product Liability | **151 Medicare Act**<br><br>Social Security:<br>861 HIA ((1395ff)<br>862 Black Lung (923)<br>863 DIWC/DIWW (405(g)<br>864 SSID Title XVI<br>865 RSI (405(g)<br>Other Statutes<br>891 Agricultural Acts<br>892 Economic Stabilization Act<br>893 Environmental Matters<br>894 Energy Allocation Act<br>890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| **E.** *General Civil (Other)* | **OR** | **F.** *Pro Se General Civil* | |
|---|---|---|---|
| Real Property<br>210  Land Condemnation<br>220  Foreclosure<br>230  Rent, Lease & Ejectment<br>240  Torts to Land<br>245  Tort Product Liability<br>290  All Other Real Property<br><br>Personal Property<br>370  Other Fraud<br>371  Truth in Lending<br>380  Other Personal Property Damage<br>385  Property Damage Product Liability | Bankruptcy<br>422 Appeal 28 USC 158<br>423 Withdrawal 28 USC 157<br><br>Prisoner Petitions<br>535  Death Penalty<br>540  Mandamus & Other<br>550  Civil Rights<br>555  Prison Condition<br><br>Property Rights<br>820  Copyrights<br>830  Patent<br>840  Trademark<br><br>Federal Tax Suits<br>870  Taxes (US plaintiff or defendant<br>871  IRS-Third Party 26 USC  7609 | Forfeiture/Penalty<br>610  Agriculture<br>620  Other Food &Drug<br>625  Drug Related Seizure of Property 21 USC 881<br>630  Liquor Laws<br>640  RR & Truck<br>650  Airline Regs<br>660  Occupational Safety/Health<br>690  Other<br><br>Other Statutes<br>400  State Reapportionment<br>430  Banks & Banking<br>450  Commerce/ICC Rates/etc.<br>460  Deportation | 470  Racketeer Influenced & Corrupt Organizations<br>480  Consumer Credit<br>490  Cable/Satellite TV<br>810  Selective Service<br>850  Securities/Commodities/ Exchange<br>875  Customer Challenge 12 USC 3410<br>900  Appeal of fee determination under equal access to Justice<br>950  Constitutionality of State Statutes<br>890  Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Challenge via 16 USC § 1540 (g) for agency failure to make 90 day finding on petition as required by 16 USC § 1533 (b)(3)(A).

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____ JURY DEMAND: | Check YES only if demanded in complaint YES ☐ NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  1/15/08    SIGNATURE OF ATTORNEY OF RECORD  _____

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.